### SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

### PHOENIX TELECOM, L.L.C., Jerold Benjamin Clawson, Jerry Deland Beacham and H. Ellis Ragland, Defendants.

### No. 1:00CV1970–JTC.

United States District Court, N.D. Georgia, Atlanta Division.

July 27, 2001.

---

James Edgar Long, Edward Gary Sullivan, William P. Hicks, Securities & Exchange Commission, Atlanta, GA, for Plaintiff.

Hayes Michael Dever, Douglas Max Robinson, Friedman, Dever & merlin, Atlanta, GA, for Phoenix Telecom, LLC, Jerold Benjamin Clawson.

James David Dantzler, Jr., McKenna, Long & Aldridge, Atlanta, GA, for Jerry Deland Beacham, H. Ellis Ragland, Jr., Receiver, William G. Hays, Jr.

James Timothy White, Stites & Harbison, Atlanta, GA, for Fidelity National Bank.

Larry W. Johnson, Morris, Schneider & Prior, Atlanta, GA, for Bank United.

Stephen W. Mooney, Smith, Currie & Hancock, Atlanta, GA, for Communications Management Services, Inc.

## *ORDER*

CAMP, District Judge.

This case is before the Court on Plaintiff's Motion to Set Disgorgement and Civil Penalties [# 61–1], the Receiver's Motion for Authority to Pay Professional Fees and Reimburse Costs [# 63–1 and # 63–2], and the Motion for Leave to File Proceeding submitted by Communications Management Services, Inc. [# 43–1].

## I. PROCEDURAL BACKGROUND

On August 2, 2000, Plaintiff Securities and Exchange Commission ("Commission") filed suit against Defendants seeking a temporary restraining order, preliminary injunction, and other equitable relief. The Court entered a temporary restraining order against Defendants Phoenix Telecom, L.L.C. ("Phoenix") and Jerold Benjamin Clawson ("Clawson"), appointed a receiver for Phoenix, and froze the assets

of all defendants including Jerry Deland Beacham ("Beacham") and H. Ellis Ragland ("Ragland"). The following week, the Court held a motions hearing, heard arguments from the parties, and entered a preliminary injunction against Defendants.

Prior to this hearing, Ragland submitted to an Order of Permanent Injunction and Other Relief. This Order stated that "disgorgement and civil penalties as to defendant Ragland shall be resolved at a later date upon motion by the Commission." *SEC v. Phoenix Telecom,* Civil Action No. 1:00–CV–1970–JTC (N.D.Ga. August 10, 2000)(order of permanent injunction as to H. Ellis Ragland); [# 14–1]. Ragland, the former Vice–President and co-founder of Phoenix, previously violated state and federal securities laws in 1994 by operating a ponzi scheme and misappropriating $670,042 for his personal use. *SEC v. Ragland,* Civil Action No. 1:93–CV–2133–JOF (N.D.Ga.). As a result of this illegal conduct, he was subjected to a similar injunction in the federal court and received a criminal conviction in the state court. *Georgia v. Ragland,* Action No. 92–CR–00060–3 (Clayton Superior Ct.).

On May 11, 2001, Defendants Beacham and Clawson filed consent orders in which they submitted to the entry of a permanent injunction and were disgorged of certain funds obtained in the Phoenix Telecom enterprise. Plaintiff now moves to set disgorgement and civil penalties against Ragland. Defendant Ragland does not oppose this motion.

## II. MOTION TO SET DISGORGEMENT AND CIVIL PENALTIES

██ The remedy of disgorgement is designed both to deprive a wrongdoer of his unjust enrichment and to deter others from violating the securities laws. *See SEC v. Blatt,* 583 F.2d 1325, 1335 (5th Cir.1978). "The purpose of disgorgement is not to compensate the victims of the fraud, but to deprive the wrongdoer of his ill-gotten gain." *Id.* Because disgorgement is remedial and not punitive, the court's power to order disgorgement "extends only to the amount with interest by which the defendant profited from his wrongdoing." *Id.; see also SEC v. Friendly Power Co.,* 49 F.Supp.2d 1363, 1372–73 (S.D.Fla.1999)("the amount of disgorgement ordered by the court need only be a reasonable approximation of the profits causally connected to the violation.").

Pursuant to Section 20(d) of the Securities Act of 1933, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78u(d), the Commission may also seek to impose civil penalties on Defendant Ragland. Pursuant to the United States Code, natural persons who violate federal securities laws are subject to "first tier" penalties not to exceed the greater of $5,000 or the gross amount of Defendant's pecuniary gain. 15 U.S.C. § 78u(d)(3)(B)(i). Natural persons whose violations involve fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement, on the other hand, are subject to "second tier" penalties not to exceed the greater of $50,000 or the gross amount of Defendant's pecuniary gain. 15 U.S.C. § 78u(d)(3)(B)(ii). Finally, natural persons whose violations (1) involve fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement, and (2) directly or indirectly result in substantial losses or create a significant risk of substantial losses to other persons are subject to "third tier" penalties not to exceed the greater of $100,000 or the gross amount of Defendant's pecuniary gain. 15 U.S.C. § 78u(d)(3)(B)(iii).

██ In this case, Defendant Ragland received $1,782,666 from the Phoenix Telecom enterprise from 1997 through 2000. Ragland owned a one third interest in Phoenix Telecom through Marquis Holdings, L.L.C. ("Marquis Holdings"), a Geor-

gia limited liability company. (Ragland Sworn Test. at 31; Ex. 25 to Pl.'s Mot. for T.R.O.). During the 1997 fiscal year, Phoenix distributed $173,200 to its members and Ragland's one-third interest in these distributions totaled $57,666. (Ex. 6 to Pl.'s Mot. for T.R.O.). In 1998, Ragland received approximately $800,000, (Ragland Sworn Test. at 99; Ex. 25 to Pl.'s Mot. for T.R.O.), and in 1999 he received approximately $900,000 directly or indirectly through Marquis Holdings (Cambron Sworn Test.; Ex. 158). Finally, during fiscal year 2000, Ragland received at least $25,000 directly or indirectly through Marquis Holdings. (Cambron Sworn Test. at 68). Therefore, as a result of his involvement in the Phoenix Telecom enterprise, Defendant Ragland received at least $1,782,666. (Long Decl. at 2; Pl.'s Mot. to Set Disgorgement, Ex. A).

Based upon the foregoing, Plaintiff's Motion to Set Disgorgement and Civil Penalties [# 61–1] is **GRANTED**. Because the court's power to order disgorgement "extends only to the amount with interest by which the defendant profited from his wrongdoing," the Court orders Defendant Ragland to pay disgorgement in the amount of $1,782,666, representing his gains from the conduct alleged in the Complaint, plus pre-judgment interest. This amount shall be paid within thirty (30) days from the entry of the Court's Order.

█ The Court also orders Defendant Ragland to pay a civil penalty in the amount of $110,000. As a one-third owner of the company, Defendant Ragland understood that the company (1) had operated at a loss since 1998, (2) had a negative net worth, and (3) had absolutely no insurance on the investments aside from the assets of the company. *SEC v. Phoenix Telecom*, Civil Action No. 1:00–CV–1970–JTC, pp. 4–5 (N.D.Ga. August 14, 2000)(order of preliminary injunction); [# 16–1]. Despite

this knowledge, Defendant Ragland and the other Defendants marketed the Phoenix program as a safe, insured investment. *Id.* at 4. Further, Defendant Ragland knew that he had previously been subjected to civil and criminal penalties for similar violations of federal and state securities laws. *Id.* at 5. Nonetheless, he acquiesced in the use of prepared sales materials touting the clean record of Phoenix's officers without disclosing either his criminal history or his previous securities violations. *Id.* at 4–5.

Because the violations committed in this case (1) involved fraud, deceit, and manipulation and (2) directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to individual investors in the Phoenix pay-telephone plan, Defendant is subject to "third tier" civil penalties not to exceed the gross amount of Defendant's pecuniary gain. *See* 15 U.S.C. § 78u(d)(3)(B)(iii). Given Ragland's previous securities violations, his criminal history, and his concealment of this information from individual investors, a civil penalty in the amount of $110,000 is appropriate. Defendant Ragland is directed to pay this amount within thirty (30) days from entry of this Order.

### III. MOTION FOR AUTHORITY TO PAY PROFESSIONAL FEES

William G. Hays, Jr., Receiver for Phoenix Telecom, L.L.C., filed a Motion for Authority to Pay Professional Fees and to Reimburse Costs [# 63–1 and # 63–2] on June 18, 2001. Pursuant to the Court's previous Order, William G. Hays, Jr. was appointed as the Receiver for Defendant Phoenix Telecom and was authorized to engage and employ others to assist him in his duties. *SEC v. Phoenix Telecom*, Civil Action No. 1:00–CV–1970–JTC, pp. 6–7 (N.D.Ga. August 2, 2000)(temporary restraining order).

Having considered the Motion and the exhibits attached in support thereof, it is hereby ordered that the Receiver's Motion for Authority to Pay Professional Fees and to Reimburse Costs [# 63–1 and # 63–2] is

**GRANTED.** Accordingly, William G. Hays, Receiver for Phoenix Telecom, L.L.C., is hereby authorized and directed to pay out of the assets of the Receiver Estate $85,561.53 for professional fees and expenses incurred as follows:

a. The Receiver is hereby authorized and directed to pay $2,680.00 to himself for professional services rendered and expenses incurred from January 1, 2001 through April 30, 2001;

b. The Receiver is hereby authorized and directed to pay $39,244.41 to William G. Hays & Associates, Inc., his financial consulting firm, for professional services rendered and expenses incurred from January 1, 2001 through April 30, 2001;

c. The Receiver is hereby authorized and directed to pay $31,197.05 to Long Aldridge & Norman LLP, his counsel, for professional services rendered and expenses incurred from January 1, 2001 through April 30, 2001;

d. The Receiver is hereby authorized and directed to pay $473.80 to The Baynard Firm for professional services and costs incurred from January 1, 2001 through February 28, 2001; and

e. The Receiver is hereby authorized and directed to pay $11,966.27 to the accounting firm of McKinnon and Associates, Inc. for professional services and costs incurred through June 15, 2001.

## IV. MOTION FOR LEAVE TO FILE PROCEEDING

On August 2, 2000, the Court entered a temporary restraining order against Defendants Phoenix and Clawson which stated, among other things, that:

all creditors and other persons seeking money damages or other relief from defendant Phoenix and all others acting on behalf of such creditors and other persons ... are, until further order of this Court, hereby stayed and restrained from doing anything to interfere with the possession, recovery or management by the Receiver of the property and assets owned, controlled, belonging to, or in the possession of the Receiver Estate, or to interfere with the Receiver in any manner during the pendency of this proceeding.

*SEC v. Phoenix Telecom,* Civil Action No. 1:00–CV–1970–JTC, p. 11 (N.D.Ga. August 2, 2000)(temporary restraining order).

Communications Management, Inc. now moves the Court for leave to file a Complaint against Phoenix Telecom, L.L.C. for breach of contract. The Government did not respond to the motion and apparently does not oppose it. *See* Local Rule 7.1(B), NDGa ("Failure to file a response shall indicate that there is no opposition to the motion"). Therefore, the Motion for Leave to File Proceeding [# 43–1] is **GRANTED** and Communications Management is permitted to file a Complaint against Phoenix Telecom.

## V. CONCLUSION

Based upon the foregoing, Plaintiff's Motion to Set Disgorgement and Civil Penalties [# 61–1] is **GRANTED.** Defendant Ragland is **DIRECTED** to pay (1) disgorgement in the amount of $1,782,666, representing his gains from the conduct alleged in the Complaint, plus pre-judgment interest; and (2) "third tier" civil penalties in the amount of $110,000. These amounts must be paid within thirty (30) days from entry of the Court's Order.

The Receiver's Motion to Pay Professional Fees and Reimburse Costs [# 63–1 and # 63–2] is also **GRANTED.** The Receiver is authorized and directed to pay out of the assets of the Receiver Estate $85,561.53 for the professional fees and expenses described in Part III of this Order. Finally, the Motion for Leave to File Proceeding submitted by Communications Management Services, Inc. [# 43–1] is **GRANTED.**